# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CASE NO: 23-12979-B

JOHN P. MIDDLETON,

Plaintiff/Appellant,

v.

THE HOLLYWOOD REPORTER, LLC,
*et al.*,

Defendants/Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:22-cv-21951-JEM

## <u>APPELLEES THE HOLLYWOOD REPORTER, LLC'S AND GARY BAUM'S ANSWER BRIEF</u>

SHULLMAN FUGATE PLLC
Rachel E. Fugate (Fla. Bar No. 144029)
Allison S. Lovelady (Fla. Bar No. 70662)
Minch Minchin (Fla. Bar No. 1015950)
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619
Email: rfugate@shullmanfugate.com
Email: alovelady@shullmanfugate.com
Email: mminchin@shullmanfugate.com

*Counsel for Appellees The Hollywood Reporter, LLC and Gary Baum*

## <u>Certificate of Interested Persons and Corporate Disclosure Statement</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a), Appellees The Hollywood Reporter, LLC ("THR") and Gary Baum ("Baum," and collectively, "Appellees") certify that the following is a full and complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this action and to this appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to any party:

Baum, Gary (Appellee)

Becerra, The Honorable Jacqueline (United States Magistrate Judge, Southern District of Florida)

Bird Marella PC (Attorneys for Appellee Roy Lee)

Clare Locke, LLP (Former Attorneys for Appellant)

Davis, Daniel E. (Attorney for Appellant)

Ede, Jared (Former Attorney for Appellant)

Fugate, Rachel E. (Attorney for Appellees THR and Gary Baum)

Gordon, Jason (Former Attorney for Appellant)

The Hollywood Reporter, LLC (Appellee) is a privately held limited liability company owned by PME Holdings, LLC, which in turn is owned by PME Topco, LLC, which in turn is owned by Penske Media Corporation and EMH-PME Holdings, LLC. No publicly held corporation holds 10 percent or more of its interests.

Kim, Jay (Attorney for Appellee Roy Lee)

Kim Vaughan Lerner LLP (Attorneys for Appellee Roy Lee)

Lalchandani, Kabir Arjan (Attorney for Appellant)

Lalchandani Simon, PL (Attorneys for Appellant)

Law Offices of Jason Gordon, P.A. (Former Attorney for Appellant)

Lee, Jumin (Attorney for Appellee Roy Lee)

Lee, Roy (Appellee)

Lovelady, Allison S. (Attorney for Appellees THR and Gary Baum)

Martinez, The Honorable Jose (United States District Judge, Southern District of Florida)

Middleton, John P. (Appellant)

Minchin, Minch (Attorney for Appellees THR and Gary Baum)

Pesant, Bibiana, (Attorney for Appellant)

Phillips, Candace (Attorney for Appellee Roy Lee)

Rhow, Ekwin E. (Attorney for Appellee Roy Lee)

Salzano, Frank (Attorney for Appellant)

Salzano Ettinger Lampert & Wilson, LLP (Attorneys for Appellant)

Shullman Fugate PLLC (Attorneys for Appellees THR and Gary Baum)

Timmann, Shannon Baldwin (Former Attorney for Appellant)

Williamson, Brady (Attorney for Appellant)

In accordance with Eleventh Circuit Rule 26.1-3(b), Appellees further certify that no publicly traded company or corporation has an interest in the outcome of this appeal or owns any stock in Appellees.

*/s/ Rachel E. Fugate*

Rachel E. Fugate
Florida Bar No. 144029
Allison S. Lovelady
Florida Bar No. 70662
Minch Minchin
Florida Bar No. 1015950
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619
Email: rfugate@shullmanfugate.com
Email: alovelady@shullmanfugate.com
Email: mminchin@shullmanfugate.com

*Counsel for Appellees The Hollywood
Reporter, LLC and Gary Baum*

## Statement Regarding Oral Argument

Appellees THR and Baum believe that this appeal is frivolous. The trial court correctly determined—in accordance with all relevant case law—that because the alleged defamation claim arose in California, the suit is time-barred under California's statute of limitations for defamation. Accordingly, oral argument is unnecessary under the standard established by Rule 34(a)(2) of the Federal Rules of Appellate Procedure.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement.............. C-1

Statement Regarding Oral Argument ........................................................................ i

Table of Contents........................................................................................................ ii

Table of Authorities.................................................................................................... iv

Counter-Statement on Jurisdiction ........................................................................ ix

Counter-Statement of the Issues ............................................................................. 1

Counter-Statement of the Case ............................................................................... 1

    Statement of the Facts ......................................................................................... 2

    Proceedings and Disposition Below ................................................................. 4

    Statement of the Standard of Review............................................................... 10

Summary of the Argument ...................................................................................... 11

Argument and Citations to Authority .................................................................. 12

  I.   The District Court correctly determined that the case was time-barred
       under California's statute of limitations. ..................................................... 12

      A.   The alleged injury occurred in California............................................ 14

      B.   The allegedly defamatory conduct occurred in California. ................ 18

      C.   The parties are located in California..................................................... 21

      D.   The parties' relationship is centered in California............................... 22

  II.  The district court correctly dismissed this case under local rule. .............. 28

  III. The District Court correctly denied leave to amend. ................................. 31

  IV. The district court had ample other reasons to dismiss the suit. ................. 33

      A.   The Article was privileged. ................................................................... 34

B.   The Article was not published with actual malice. ............................... 36

1.   Middleton is a public figure. ............................................................. 36

2.   Middleton did not plausibly plead actual malice. ............................. 38

Conclusion .......................................................................................................... 42

Certificate of Compliance with Type-Volume Limit,
Typeface Requirement, and Type-Style Requirement. ....................................... 44

Certificate of Service .......................................................................................... 45

# Table of Authorities

## Cases

*Barbuto v. Miami Herald Media Co.*,
    21-20608, 2022 WL 123906 (S.D. Fla. Jan. 13, 2022) .................................36

*Bates v. Cook, Inc.*,
    509 So. 2d 1112 (Fla. 1987) ...........................................................................13

*Bongino v. Daily Beast Co., LLC*,
    477 F. Supp. 3d 1310 (S.D. Fla. 2020)...........................................................35

*Brown v. Suncoast Beverage Sales, LLP*,
    2:09-498, 2010 WL 555675 (M.D. Fla. Feb. 10, 2010) .................................31

*Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*,
    831 So. 2d 204 (Fla. 4th DCA 2002)..............................................................31

*Carr v. Forbes, Inc.*,
    121 F. Supp. 2d 485 (D.S.C. 2000) ................................................................38

*Celotex Corp. v. Meehan*,
    523 So. 2d 141 (Fla. 1988) .............................................................................13

*Cepeda v. Cowles Mag. & Broadcasting, Inc.*,
    392 F.2d 417 (9th Cir. 1968) ..........................................................................37

*Chapman v. DePuy Orthopedics, Inc.*,
    760 F. Supp. 2d 1310 (M.D. Fla. 2011) .........................................................21

*Clark v. Fernandina Beach News-Leader, Inc.*,
    93-616, 1994 WL 532980 (Fla. 4th Jud. Cir. Ct. June 2, 1994)....................42

*Corsi v. Newsmax Media, Inc.*,
    519 F. Supp. 3d 1110 (S.D. Fla. 2021)...........................................................34

*Cotriss v. City of Roswell*,
    19-12747, 2022 WL 2345729 (11th Cir. June 29, 2022................................31

*Dockery v. Fla. Democratic Party*,
    799 So. 2d 291 (Fla. 2d DCA 2001) ...................................................... 41, 42

*Don King Prods., Inc. v. Walt Disney Co.*,
    40 So. 3d 40 (Fla. 4th DCA 2010) .................................................................. 40

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
    556 F.2d 113 (2d Cir. 1977) ........................................................................... 41

*Frey v. Minter*,
    4:18-191, 2018 WL 6332833 (M.D. Ga. Dec. 4, 2018) ................................. 16

*Frey v. Minter*,
    829 Fed. App'x 432 (11th Cir. 2020) ............................ 10, 16, 17, 23, 24, 32

*Friedgood v. Peters Publ'g Co.*,
    521 So. 2d 236 (Fla. 4th DCA 1988) ............................................................. 37

*Gratton v. Great Am. Commc'ns*,
    178 F.3d 1373 (11th Cir. 1999) ..................................................................... 29

*Harte-Hanks Commc'n, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ........................................................................................ 39

*Hawthorne v. United States*,
    21-10164, 2022 WL 3099271 (11th Cir. Aug. 4, 2022) ................................. 30

*Heard v. Nix*,
    170 Fed. App'x 618 (11th Cir. 2006) ............................................................. 30

*Hustler Mag., Inc. v. Falwell*,
    485 U.S. 46 (1988) .......................................................................................... 38

*Huszar v. Gross*,
    468 So.2d 512 (Fla. 1st DCA 1985) ............................................................... 34

*In re Zantac (Ranitidine) Products Liab. Litig.*,
    20-2924, 2020 WL 6907056 (S.D. Fla. Nov. 24, 2020) ................................. 20

*Jacoby v. Cable News Network, Inc.*,
    537 F. Supp. 3d 1303 (M.D. Fla. 2021) .......................................... 38, 41, 42

*Jaisinghani v. Capital Cities/ABC, Inc.*,
    973 F. Supp. 1450 (S.D. Fla. 1997)..................................... 13, 20, 26, 27, 32

*Jeffers v. Kerzner Int'l Hotels Ltd.*,
    319 F. Supp. 3d 1267 (S.D. Fla. 2018).........................................................22

*Jews For Jesus, Inc. v. Rapp*,
    997 So. 2d 1098 (Fla. 2008) .........................................................................34

*Jones v. Metro Prop. Group, LLC*,
    13-11977, 2014 WL 1305142 (E.D. Mich. Mar. 28, 2014) ..........................38

*Klayman v. City Pages*,
    5:13-143, 2015 WL 1546173 (M.D. Fla. April 3, 2015)........................ 38, 39

*Klayman v. Judicial Watch, Inc.*,
    07-22413, 2008 WL 11333055 (S.D. Fla. Sept. 30, 2008) .............. 21, 25, 32

*Larreal v. Telemundo of Florida, LLC*,
    489 F. Supp. 3d 1309 (S.D. Fla. 2020).........................................................35

*Michel v. NYP Holdings, Inc.*,
    14-62649, 2015 WL 1285309 (S.D. Fla. Mar. 4, 2015)................................23

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) .................................. 10, 18, 23, 25, 39, 41, 42

*Mile Marker v. Petersen Publ'g, L.L.C.*,
    811 So. 2d 841 (Fla. 4th DCA 2002)..................................................... 34, 38

*Moon v. Newsome,*
    863 F.2d 835 (11th Cir. 1989) .....................................................................30

*New York Times v. Sullivan*,
    376 U.S. 254 (1964)......................................................................................36

*Nix v. ESPN, Inc.*,
    1:18-22208, 2018 WL 8802885 (S.D. Fla. Aug. 30, 2018)........ 15, 20, 26, 32

*Nix v. ESPN, Inc.*,
    772 Fed. App'x 807 (11th Cir. 2019) ...................... 10, 13, 14, 15, 25, 26, 32

*Olivares v. Warden, USP Coleman I*,
    786 Fed. App'x 994 (11th Cir. 2019) ............................................30

*Ovadia v. Bloom*,
    756 So. 2d 137 (Fla. 3d DCA 2000) .............................................31

*Patrick v. Cleveland Scene Pub. LLC*,
    582 F. Supp. 2d 939 (N.D. Ohio 2008) ........................................38

*Powers v. U.S. Homeland Sec.*,
    22-10042, 2023 WL 4623608 (11th Cir. July 19, 2023) ...................... 11, 31

*Rasmussen v. Collier Cnty. Publ'g Co.*,
    946 So. 2d 567 (Fla. 2d DCA 2006) .............................................36

*Rembert v. Dunmar Estates*,
    22-11526, 2022 WL 17986207 (11th Cir. Dec. 29, 2022) ................... 11, 30

*Rendon v. Bloomberg, L.P.*,
    403 F. Supp. 3d 1269 (S.D. Fla. 2019) ........................................34

*Sailboat Key, Inc. v. Gardner*,
    378 So. 2d 47 (Fla. 3d DCA 1979) ...............................................5

*Stearns Bank, N.A. v. Shiraz Inv., LLC*,
    8:12-313, 2012 WL 3133679 (M.D. Fla. July 31, 2012) ...............................5

*Tobinick v. Novella*,
    108 F. Supp. 3d 1299 (S.D. Fla. 2015) ...........................................5

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ................................. 33, 36, 38, 42

*Williams v. Worldwide Flight SVCS., Inc.*,
     877 So. 2d 869 (Fla. 3d DCA 2004)............................................................31

**Statutes**

§ 95.10, Fla. Stat. ................................................................................ 6, 12

Cal. Civ. Proc. Code § 340(c) .............................................................. 6, 14

**Other Authorities**

Fed. R. Civ. P. 41(b) ...............................................................................30

Restatement (Second) of Conflict of Laws § 150........................... 14, 16

S.D. Fla. Local R. 7.1(c)(1) ...................................................................28

## <u>Counter-Statement on Jurisdiction</u>

Appellees agree with Appellant John Middleton's Statement of Subject Matter and Appellate Jurisdiction except to note that, for the reasons explained in Baum's motion to dismiss, the trial court lacked personal jurisdiction over him. (Doc. 27). Specifically, under Florida's long-arm statute, Baum did not direct any tortious conduct toward the State of Florida; and under the Due Process Clause of the 14th Amendment, Middleton's claims didn't relate to any of Baum's contacts with Florida; Baum didn't purposefully avail himself to Florida; and the exercise of personal jurisdiction would not have comported with traditional notions of fair play and substantial justice. (*Id.*).

## Counter-Statement of the Issues

1.  Whether the trial court rightly determined that Middleton's suit was time-barred under California's statute of limitations.

2.  Whether the trial court rightly dismissed Middleton's suit for failure to abide by local rules.

3.  Whether the trial court rightly denied Middleton leave to amend with prejudice because the proposed pleading was futile.

4.  Whether the trial court could have rightly dismissed Middleton's suit for alternative reasons: that the reporting was privileged and not published with actual malice.

## Counter-Statement of the Case

Appellant, John Middleton ("Middleton"), sued his former business partner and fellow movie producer Roy Lee ("Lee") in Los Angeles County, California. When Appellees The Hollywood Reporter ("THR") and Gary Baum ("Baum") reported on the high-profile and acrimonious conflict, Middleton sued THR, Baum, and Lee (again) in the Southern District of Florida. (Doc. 1). The trial court correctly dismissed the suit below because it was filed a full year past the applicable statute of limitations. (Doc. 77). The trial court also correctly denied Middleton's motion to amend his complaint with prejudice because any amendment would have been futile. (*Id.*).

**Statement of the Facts**

Middleton and Lee are movie producers and former business partners who—until their relationship fell apart sometime around 2016—collaborated on, by Middleton's count, more than 40 films. (Doc. 26-11 at 2).[1] On August 28, 2019, Middleton sued Lee in Los Angeles, California, for several claims, including fraud, breach of contract, and estoppel (the "California Action"). (Doc. 26-11). Middleton's complaint in the California Action characterized Lee as a "consummate Hollywood con-artist" who exploited Middleton out of millions of dollars to fund a glamorous, jet-setting lifestyle yet cut Middleton out of the production credits and fees that Middleton deserved. (*Id.* at ¶ 1). Specifically, Middleton alleged that Lee breached two contracts to pay Middleton producer fees for 40 films, failed to provide Middleton with producer credit on 29 films, and defrauded Middleton out of more than $7 million. (*Id.* at ¶¶ 12–31). All pleadings from both parties in the California Action alleged that both Middleton and Lee (as well as their respective production companies, which are also parties to the California Action) resided in Los Angeles County, California. (Doc. 26-11 at ¶¶ 5–

---

[1] Doc. 26-11 does not appear in Middleton's appellate appendix. Pursuant to 11th Circuit Rule 30-1(b), THR and Baum shall provide a supplementary appendix that includes the missing, relevant filings below.

8; Doc. 26-12 at ¶¶ 6–9; Doc. 26-13 at ¶¶ 6–9; Doc. 26-15 at ¶¶ 4–7; Doc. 26-16 at ¶¶ 4–7).

In the volley of pursuant pleadings, Lee filed a pair of counter-complaints, alleging that Middleton breached two contracts and an implied covenant of good faith and fair dealing, and that Middleton defrauded and interfered with Lee and his business. (Doc. 26-15, 26-16). Lee's counter-complaint of May 11, 2020, levied nearly a decade's worth of unflattering allegations, beginning with Middleton fraudulently inducing Lee to sign their agreement by promising investment capital and production services for Lee's business, even though Middleton "had no intention of doing any actual work: all he truly desired was the glamorous Hollywood lifestyle, which would allow him to rub shoulders with famous movie stars and executives." (Doc. 26-15 at ¶ 18). Lee alleged that Middleton then not only failed to honor the contract, but he also engaged in wild behavior that rendered Lee and his company vulnerable to both financial loss and multiple civil suits. (*Id.* at ¶¶ 29–51). Ultimately, Lee alleged, Middleton's behavior "grew more erratic," which "rendered the partnership completely untenable," and left Lee with "no desire whatsoever to work with Middleton again, given the substantial damage Middleton has already caused to Roy Lee's reputation and business." (*Id.* at 51–68).

In response, on June 10, 2020, Middleton moved to strike large swaths of Lee's pleading, arguing that the counter-complaint was "nothing more than a disguised press release" and that "Lee's deeply personal attacks against Middleton in the [counter-complaint] are ironic, given Lee's own personal proclivities and tendency to blur the line between business and illicit pleasure." (Doc. 26-14 at 9–10).

Two weeks after Middleton filed his motion to strike, THR reported on the *Middleton v. Lee* suit and published an article, authored by Baum, on June 24, 2020, titled *Allegations of Prostitution, Substance Abuse, and Spying: Inside Hollywood's Nastiest Producer Feud* (the "Article"). The Article, which chronicled the dramatic deterioration of the parties' business relationship, extensively quoted and cited the parties' respective pleadings and Middleton's motion to strike; it also included statements about the lawsuit from Lee, Middleton's publicist Sallie Hofmeister, Middleton's counsel Marty Singer, and many of the parties' friends and colleagues. (Doc. 26-1). On June 25, 2020, the Article was additionally published online, where it was, and remains, accessible worldwide. (*Id.*).

**Proceedings and Disposition Below**

On June 24, 2022—365 days after the California statute of limitations for defamation expired and on the day that Florida's statute of limitations expired—

Middleton launched an ancillary assault in his campaign against Lee by filing the underlying suit in the Southern District of Florida. (Doc. 1; the "Original Complaint"). The Original Complaint, filed against Lee, THR, and Baum, alleged that five statements in the Article were defamatory, and that the publication of the Article constituted intentional infliction of emotional distress. (*Id.*).[2]

But Middleton did not serve any defendant with the pleading. Instead, the suit sat dormant until September 30, 2022, when the trial court administratively closed the case and asked Middleton to show cause why the case should not remain closed. (Doc. 4). The Court warned Middleton that "Failure to show good cause will result in the dismissal of all claims against Defendants without prejudice and without further notice." (*Id.* at 1). In response to the order to show cause, Middleton stated that he waited to serve the complaint because he was allegedly in settlement communications with Lee, which, if successful, "would have resolved this matter as well." (Doc. 9 at 1).

---

[2] Middleton technically filed two defamation claims: "defamation" (Count I) and "trade libel" (Count III). (Doc. 1 at ¶¶ 24–33, 51–65). The two torts are functional equivalents because the pertinent defenses and analyses apply with equal force to both. *See Sailboat Key, Inc. v. Gardner*, 378 So. 2d 47, 48 (Fla. 3d DCA 1979); *Stearns Bank, N.A. v. Shiraz Inv., LLC*, No. 8:12-CV-313, 2012 WL 3133679, at *3 (M.D. Fla. July 31, 2012); *Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1309 (S.D. Fla. 2015). Middleton also lodged a breach of fiduciary duty claim against Lee only. (Doc. 1 at 34–41).

On December 5, 2022, after Middleton served the complaint, THR and Baum each filed motions to dismiss. (Docs. 25, 27). As explained in THR's dismissal motion, Florida's borrowing statute, codified in Section 95.10, Florida Statutes, requires that a trial court must "borrow" the law of the jurisdiction where a cause of action arose if the law would bar suit in that jurisdiction. *See* § 95.10, Fla. Stat. Frequently applied in the statute-of-limitations context, the borrowing statute practically means that if a cause of action arose in a state where the statute of limitations has passed, then the plaintiff likewise cannot file suit in Florida. *Id.* The alleged defamation in this case arose in California, whose statute of limitations for defamation is half as long as Florida's. *Compare* Cal. Civ. Proc. Code § 340(c) (one year) *with* § 95.11(4)(h), Fla. Stat. (two years). Thus, because Middleton's suit was barred in California, it was also barred in Florida. (Doc. 25 at 6–9).

THR's motion also explained that the reporting in the Article was shielded from liability under Florida's neutral-report privilege and that Middleton had failed to plausibly allege any facts to suggest that THR acted with actual malice. (*Id.* at 9–17). Baum both adopted the arguments of THR's motion and also filed a separate motion under Rule 12(b)(2), arguing that the trial court lacked personal jurisdiction over him because he lacked sufficient contacts with the State of Florida. (Doc. 27.) Lee also filed a motion to dismiss. (Doc. 30).

Middleton did not file a timely response to the dismissal motions. Instead, he filed a self-granting motion for extension in late December of 2022, requesting additional time to oppose the motions to dismiss. (Doc. 31). He then filed another motion for extension of time in January 2023. (Doc. 34). The district court granted neither motion, and Middleton remained inert. Also in January 2023, Middleton parted ways with his counsel, citing irreconcilable differences. (Doc. 38.) He obtained new counsel in February 2023. (Doc. 40).

On March 23, 2023 the court entered a scheduling order that warned the parties, in bold typeface, that failure to comply with the local rules "may result in sanctions, including dismissal without prejudice or the entry of default, without further notice." (Doc. 43 at 6).

Another month passed, and Middleton had not yet opposed the dismissal motions. Instead, on April 25, 2023, Middleton filed a motion for leave to amend. (Doc. 63). Unlike typical Rule 15 motions, the motion did not seek leave to add any parties or claims. Instead, the motion and accompanying proposed amended complaint (Doc. 63-1; the "PAC") sought to "streamline" the pleadings by removing three claims, leaving a single claim for defamation. (Doc. 63 at 1; Doc. 63-1 at ¶¶ 91–108). And within the sole remaining count, the PAC removed the Original Complaint's allegations regarding three of the five allegedly defamatory

statements. (*Id.*) Thus, the PAC featured a single claim against Baum and THR for two allegedly defamatory statements within the Article.

Subtractions aside, the PAC primarily featured two new, substantive assertions ostensibly intended to address the deficiencies outlined in the motions to dismiss. First, the PAC alleged that Middleton moved to Florida in 2018 (providing a date certain to bolster the Original Complaint's allegation that he merely "is domiciled" in Florida). Second, it alleged that THR, as a courtesy to Middleton's publicist, amended a quotation appearing in the Article. *Compare* (Doc. 1) *with* (Doc. 63-1). *See also* Note 10, *infra* (pointing out two additional yet insignificant and uncontested allegations appearing in the PAC). THR and Middleton opposed the motion, arguing because the suit was time-barred, amendment was futile. (Doc. 66).

On June 20, 2023, the trial court ordered Middleton to either respond to the outstanding motions to dismiss or show cause why the case should not be dismissed for his failure to respond. (Doc. 69.) The order noted that the deadline to respond to the motions was December 19, 2022, and that "[p]ursuant to Rule 7.1(c) of the Local Rules for the Southern District of Florida, failure to respond may be deemed sufficient cause for granting the motion by default." (*Id.* at 1). Middleton did not respond to the motions to dismiss; he instead responded to the show-cause order by stating that his counsel believed at the time that "the most efficient course

of action" was to seek amendment rather than respond to the outstanding motions because the PAC was more "streamline[d] and narrow" than the Original Complaint. (Doc. 70 at 2–4). THR and Baum replied to Middleton's response to the show-cause order, once again pointing to the PAC's futility on grounds of statute of limitation, actual malice, and privilege, and noting that seeking efficiency is no justification for violating court orders. (Doc. 73).

On August 10, 2023—more than eight months after THR and Baum filed their motions to dismiss—the trial court dismissed Middleton's suit. (Doc. 77). Primarily, the court found that Florida's borrowing statute demanded application of California's statute of limitations because the alleged defamation arose in California. Specifically, the court applied the relevant four-part test for determining where the cause of action arose and determined that "the California Action is pending in California, the defamatory statements were published in California, the relationship of the parties is centered in California, and all Defendants reside in California." (*Id.* at 3–7).

The court also held that Middleton's refusal to respond to the dismissal motions violated Southern District of Florida Local Rule 7.1(c), which states that failure to timely respond to a dismissal motion is grounds for dismissal by default. (*Id.* at 2–3). Beyond the two issues of the statute of limitations and violation of local rule, the trial court did not address any other grounds for dismissal.

The court also evaluated, pursuant to Rule 15(a)(2), whether the PAC was futile. The court compared the facts to a similar case, *Frey v. Minter*, 829 Fed. App'x 432 (11th Cir. 2020), and determined that Middleton's "new allegations claiming he was injured in Florida do not alter this Court's conclusion that California law applies." (Doc. 77 at 7–9). Because the PAC was futile, the court denied with prejudice Middleton's motion for leave to amend. (*Id.* at 9). This appeal followed.

After filing a notice of appeal, and once more citing irreconcilable differences, Middleton again changed counsel. (Docs. 85, 93). After dismissal of the appeal on December 5, 2023 for failure to timely provide an appendix, the appeal was reinstated on December 22, 2023. [D.E. 26, 28].

**Statement of the Standard of Review**

When reviewing an order granting dismissal for failure to state a claim under Rule 12(b)(6), the standard of review is *de novo. Nix v. ESPN, Inc.*, 772 Fed. App'x 807, 809 (11th Cir. 2019). Under Rule 12(b)(6), "application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because i]n these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation"). *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

Regarding involuntary dismissal under local rule—as authorized by Federal Rule of Civil Procedure 41(b)—the standard of review is abuse of discretion. *Rembert v. Dunmar Estates*, 22-11526, 2022 WL 17986207, at *1 (11th Cir. Dec. 29, 2022). Furthermore, choice-of-law determinations are also reviewed *de novo*, yet the factual underpinnings of such determinations are reviewed for clear error. *Id.* Moreover, this Court "give[s] great deference to [a trial] court's interpretation of its local rules." *Powers v. U.S. Homeland Sec.*, 22-10042, 2023 WL 4623608, at *2 (11th Cir. July 19, 2023).

## Summary of the Argument

Recognizing that THR and Baum were mere collateral damage in Middleton's war against his former business partner, the trial court rightly dismissed Middleton's suit. Primarily, the court correctly found that Middleton's suit was time-barred under California's statute of limitations. Florida's borrowing statute mandates that if a cause of action arose in a state where the statute of limitations has expired, the plaintiff can't file the suit in Florida. Here, the trial court rightly found that because the alleged defamation arose in California, which has a one-year statute of limitations for libel, Middleton's attempt to file suit two years later in Florida was impermissible.

The district court also rightly found that Middleton's failure to respond to THR's and Baum's motions to dismiss—despite eight months' passage and an

order to show cause—violated the Southern District of Florida's requirement that motions be opposed within 14 days. For this reason, too, the court correctly dismissed Middleton's suit by default.

The trial court further found that amendment was futile because the allegations of the PAC did not change the fact that the putative cause of action arose in California, which mandated application of California's statute of limitations and rendered the action time-barred. For this reason, the court rightly denied with prejudice Middleton's motion for leave to amend.

Moreover, had the trial court ventured beyond THR's dismissal motion's first argument, it would have also dismissed the suit for two other reasons: the at-issue statements were both privileged and not published with actual malice.

## Argument and Citations to Authority

**I.  The District Court correctly determined that the case was time-barred under California's statute of limitations.**

The trial court found that Middleton filed his defamation suit 365 days too late. (Doc. 77 at 3–9). Section 95.10, Florida Statutes, commonly known as Florida's "borrowing statute," states that "[w]hen the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." § 95.10, Fla. Stat. As the Florida Supreme Court explained, "The purpose of the statute is to discourage 'forum shopping' and the

filing of lawsuits in Florida that have already been barred in the jurisdiction where the cause of action arose." *Celotex Corp. v. Meehan*, 523 So. 2d 141, 143 (Fla. 1988).

To determine where a tort arose—and, in turn, whether the borrowing statute requires application of another state's statute of limitations—Florida courts adopted the "significant relationships" test from the Restatement of Conflict of Laws (the "Restatement"). *See Nix*, 772 Fed. App'x at 809; *Jaisinghani v. Capital Cities/ABC, Inc.*, 973 F. Supp. 1450, 1452 (S.D. Fla. 1997), *aff'd sub nom.* 149 F.3d 1195 (11th Cir. 1998). Under the significant relationships test, the court looks at four factors to ascertain the jurisdiction where the tort allegedly arose: (1) the state where the alleged injury occurred; (2) the state where the conduct causing the injury occurred; (3) the domicile, residence, or citizenships of the parties; and (4) the state where the relationship, if any, between the parties is centered. *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1115 (Fla. 1987).

Middleton argues on appeal that the trial court errantly applied the four factors in finding that the cause of action arose in California. He avers that each factor favors a finding that alleged defamation arose in Florida and that Florida bears the most significant relationship to the case. (Initial Br. at 10–16).

Middleton is mistaken. As the trial court rightly noted, the Article was researched, written and published in Los Angeles County about a relationship

between two Hollywood producers who worked in California and then sued each other in California. Application of the significant relationships test to these facts demonstrates that the cause of action arose in California, which has a one-year statute of limitations for defamation. *See* Cal. Civ. Proc. Code § 340(c). The borrowing statute, therefore, precluded maintenance of Middleton's action in Florida.

## A. The alleged injury occurred in California.

The Restatement, as adopted by the State of Florida, establishes that the jurisdiction where an alleged injury occurs is the state where the plaintiff was engaged in the activity giving rise to the suit. *See* Restatement (Second) of Conflict of Laws § 150. In the defamation context, as the *Nix* court explained, "if the defamatory matter [is] related to an activity of the plaintiff that is principally located in [a specific] state," then that state is where the alleged injury occurred. *Nix,* 772 Fed. App'x at 810 (quoting Restatement (Second) of Conflict of Laws § 150). And here, the allegedly defamatory matter pertained to the contentious allegations levied in the California Action concerning Middleton's activities as a producer in Hollywood—and the Article mentioned no activities in Florida. (Doc. 26-1). Thus, to the extent any injury occurred, then, as explained in THR's dismissal motion, it would have occurred in California. (Doc. 25 at 7).

On appeal, Middleton points to the Restatement's determination that the "state of most significant relationship will usually be the state where the plaintiff was domiciled." (Initial Br. at 12) (citing *Nix*, 772 Fed. App'x at 810 (ellipses and citation omitted)). In turn, Middleton argues that because he alleges in the PAC to have lived in Florida since 2018, two years before the Article was published, the first factor favors an application of Florida law. (Initial Br. at 12–13). Middleton's argument lacks merit.

As the Restatement makes plain, a defamation plaintiff's domicile is not the locus of the alleged harm if, as here, the allegedly defamatory publication concerned events that occurred in another jurisdiction.[3] *See Frey*, 829 Fed. App'x

---

[3] Middleton, a Hollywood producer, also does not plausibly plead that he was domiciled in Florida when the Article was published. One month before the Article was published, he alleged in the California Action that he lived and conducted his business in California. (Doc. 26-13 at ¶¶ 6-9). *See also Nix v. ESPN, Inc.*, 1:18-CV-22208-UU, 2018 WL 8802885, at *4 n.1 (S.D. Fla. Aug. 30, 2018) ("the Court is concerned that Plaintiff is being untruthful either to this Court or to the Southern District of New York, because in the complaint Plaintiff filed in the Southern District of New York, he alleges domicile in Texas"); *Nix*, 772 Fed. App'x at 811 (approving of the trial court's skepticism of the plaintiff's facially contradictory allegations regarding his domicile). Moreover, the Article and pleadings also make clear that, even if Middleton had moved to Florida, his primary damages, if any, would have been felt in and around Hollywood, the epicenter of production services and where Middleton works as a movie producer. *See* (Doc. 1 at ¶¶ 3, 32–33) (alleging that the Article "damage[ed] his reputation in the entertainment industry where he works as a motion picture and television producer and operates a production company"). *See also* (Doc. 26-13 at ¶ 7) (alleging that Middleton's production company and co-plaintiff in the California Action, The John Powers Middleton Companies, LLC, is based in Los Angeles).

at 435. In *Frey*, a Florida man (Frey) sued a Georgia man (Minter) for defamation regarding statements that Minter made to a Georgia-based newspaper about Frey's conduct during a previous civil case involving the two men in Georgia. The trial court applied Florida's significant relationships test regarding the defamation claim and concluded, for several reasons, that Georgia law applied. *Frey v. Minter*, 4:18-CV-191 (CDL), 2018 WL 6332833, at *3 (M.D. Ga. Dec. 4, 2018).

On appeal, this Court in *Frey* applied Florida law and explained that—according to the Restatement, as adopted by the State of Florida—the state with the most significant relationship in multi-state defamation cases is "usually" the plaintiff's domicile state because, it's assumed, "the plaintiff is known only in [the domicile] state and consequently his reputation only suffered injury there."[4] *Frey*, 829 Fed. App'x at 435 (quoting Restatement (Second) of Conflict of Laws § 150 Cmt. e). The Court then noted that, "at first glance," Florida law appeared applicable because "Frey's injury occurred in part in Florida, where he resides, and the article was available in Florida via the internet." *Id.*

But turning back to the Restatement, the Court then explained that a plaintiff's domicile is inconsequential to the significant relationships analysis if (1)

---

[4] Because neither the Original Complaint nor PAC contends—nor could they—that Middleton is not known in California, the "usual[]" assumption regarding domicile set forth in § 150, Comment E is not applicable to the instant case. *See* Restatement (Second) of Conflict of Laws § 150 Cmt. e.

the plaintiff is better known in another state; (2) the statement pertained to the plaintiff's activity that happened in another state, (3) the plaintiff suffered greater special damages in another state; or (4) the statement's place of principal circulation was in another state. *Id.* Applying these factors, the Court concluded that Frey's Florida domicile, in context, was unimportant: "the residency factor carries less weight here because the issues and circumstances of this case are centered in Georgia," and the plaintiff "has demonstrated his willingness and ability to travel to [Georgia] . . . and has recently appeared in cases there." *Id.* Thus, in the context of the case, the plaintiff's domicile was rendered insignificant because the parties' relationship was "centered around the litigation that took place in Georgia." *Id.*

Here, as in *Frey*, the alleged defamatory publication concerned events that occurred in another state, where the plaintiff was better known and had demonstrated a willingness to travel, where the events giving rise to the claim were centered, and from where the challenged article was published. (Doc. 26-1). What's more, the parties' relationship in the instant suit was also "centered around the litigation that took place in" another state. *See Frey*, 829 Fed. App'x at 435. In fact, the California Action was also the *sine qua non* for the underlying action—but for the California Action, the suit below would not exist. That is, because THR

and Baum reported on the California Action, Middleton sued Lee, THR, and Baum below.

In another similar case, this Court in *Michel v. NYP Holdings, Inc.* found that New York law applied to a defamation suit regarding an article that was published worldwide—including into Florida—about a plaintiff who alleged domicile in Florida. 816 F.3d 686, 694 (11th Cir. 2016). Conducting a significant relationships analysis, the Court opined that it was "beyond real dispute" that the alleged cause of action arose in New York because, even though the plaintiff was "domiciled in Florida, that consideration is of little relative importance" because the article was written in New York about events that occurred in New York. *Id.*

In sum, even assuming the truth of Middleton's implausibly pled allegation that he's domiciled in Florida, any alleged damages would have occurred in California, the ganglion of the production industry and the location of the events described in the Article.

## B. The allegedly defamatory conduct occurred in California.

The Article concerned the relationship between two Hollywood producers (and California residents) and the acrimonious California Action that followed the deterioration of their business partnership. (Doc. 26-1). The newsgathering, writing, and publication of the Article occurred in California. (Doc. 28 at 1–2). As Middleton correctly notes, THR, with a principal place of business in Los Angeles

County, California, publishes "*The Hollywood Reporter*, a weekly publication and associated website that covers celebrities, producers, and other topics associated with the entertainment industry." (Doc. 1 at ¶ 10). *See also* (Doc. 63-1 at ¶ 27). Additionally, Baum, the author of the Article, is a resident of Los Angeles County who works on behalf of THR within Los Angeles County. (Doc. 1 at ¶ 11; Doc. 28 at 1; Doc. 63-1 at ¶ 28). Lee, too, is a resident of Los Angeles County, where he also conducts his movie-production business. (Doc. 1 at ¶ 9; Doc. 63-1 at ¶ 26).

The trial court, finding that the second prong weighed in favor of applying California law, noted that the allegedly defamatory statements "were communicated to and authored by [Baum], a California resident, and published by THR, a company with its principal place of business in California." (Doc. 77 at 5).

Middleton on appeal attempts to counter the above facts under the second factor of the test by feebly pointing to two allegations in the PAC: that Baum knew that Middleton resided in Florida and that Baum called an unspecified person in Florida while researching the facts for the Article. (Initial Br. at 13). But Middleton does not explain why an author's alleged knowledge of a story subject's domicile has any bearing on the second factor of the significant relationships test or how a single alleged phone call—especially when pled so vaguely and denied under oath

by Baum[5]—weighs more than the veritable mountain of activities related to the Article that occurred in California.

To be certain, Florida has nothing to do with the Article. The State is not mentioned or referenced in the reporting, and the Article is focused almost exclusively on Middleton's and Lee's mudslinging in the California Action, as supported by sources within California, and as written by an author in California and then published from within California. Thus, the second factor—as properly determined by the trial court—weighs in favor of California law. *See* (Doc. 77 at 5). *See also Nix*, 2018 WL 8802885, at *4 (finding that the second factor weighed in favor of applying New York law because the decision to write the article occurred in New York, as evidenced by the dateline at the top of the article); *Jaisinghani*, 973 F. Supp. at 1453 (finding that the most dispositive consideration of the second factor was where the allegedly defaming publishing company was headquartered).

---

[5] As a matter of fact, Baum knew only what Middleton had pled in the California Action: that he was domiciled in California. In support of his motion to dismiss for lack of personal jurisdiction, Baum filed a declaration specifying that he did not know that Middleton had allegedly moved out of California and that he did not recall talking to anyone in Florida while researching the Article. *See* (Doc. 28 at 1– 2). *See also In re Zantac (Ranitidine) Products Liab. Litig.*, 20-MD-2924, 2020 WL 6907056, at *2 (S.D. Fla. Nov. 24, 2020) (noting the propriety of adjudicating Rule 12(b)(2) motions via reference to affidavits).

**C.    The parties are located in California.**

Middleton alleged in both the Original Complaint and PAC that he is

domiciled in Florida, despite working in Hollywood and repeatedly alleging

residency in Los Angeles County in the California Action. *See* (Doc. 26-11 at ¶¶

5–6); (Doc 26-12 at ¶¶ 6–7); (Doc. 26-13 at ¶¶ 6–7). Yet even if Middleton moved

to Florida, he allegedly did so in 2018—well after the bulk of the events described

in the California Action and recounted in the Article. *See Chapman v. DePuy

Orthopedics, Inc.*, 760 F. Supp. 2d 1310, 1314 (M.D. Fla. 2011) (explaining that

where parties happen to reside after the central events of a tort are "pure

happenstance"—that is, irrelevant to the analysis); *Klayman v. Judicial Watch,

Inc.*, No. 07-22413-CIV, 2008 WL 11333055, at *5 (S.D. Fla. Sept. 30, 2008)

(weighing the third factor in favor of applying District of Columbia law because

the plaintiff moved from the D.C. area to Florida after the primary events giving

rise to the complaint). *See also* (Doc. 26-1) (primarily describing events and

allegations that took place between 2010 and 2016).

Regardless of Middleton's current domicile, he concedes that all three

Defendants reside or maintain a principal place of business in Los Angeles. (Doc. 1

at ¶¶ 9–11; Doc 63-1 at ¶¶ 26–28). Thus, the trial court rightly determined that the

third factor mitigated toward finding that the alleged tort arose in California. *See*

(Doc. 77 at 5) (weighing the third factor in favor of California law because "all

three Defendants either reside or maintain a principal place of business in Los Angeles"). *See also Jeffers v. Kerzner Int'l Hotels Ltd.*, 319 F. Supp. 3d 1267, 1271 (S.D. Fla. 2018) (noting under the third factor that the majority of the defendants' businesses were located in the foreign jurisdiction).

### D. The parties' relationship is centered in California.

Because *The Hollywood Reporter*, as the name implies, reports on Hollywood, it should not be surprising that every salient relationship between the parties and every occurrence giving rise to the Article occurred in California, including the relationship between Middleton and Lee (Doc. 1 at ¶ 12); Baum's communications with Lee (Doc. 28 at 2); Baum's communications with Middleton's proxies Sallie Hofmeister and Marty Singer (Doc. 1 at ¶¶ 18–19); and, most importantly, the location of the lawsuit forming the basis of the Article (*id.* at ¶ 13). Middleton in fact makes clear that the instant suit would not exist but for the California Action and that the suit below constituted a mere extension of his dispute against Lee in Los Angeles County. (*Id.* at ¶¶ 13–14). *See also* (Doc. 9 at 1) (stating that if the California Action—where THR and Baum were not parties—had settled, then the suit below—where THR and Baum were parties—would have been resolved).

In light of these facts, and citing to *Michel,* the trial court correctly found that the fourth factor also favored application of California law because, the court

explained, the Article was "written and published by a company with its primary place of business in California and concerns people who lived and worked in California who then filed a lawsuit in California. The alleged defamatory statements at issue are centered around the California Action and the parties' relationship in California." (Doc. 77 at 5–6) (citing *Michel,* 816 F.3d at 694). *See also Frey*, 829 Fed. App'x at 435–36 (affirming that Georgia law applied to a defamation suit filed by a Florida plaintiff because "the issues and circumstances of this case are centered in Georgia").

Middleton's arguments on appeal regarding the fourth factor are threefold: he argues that (1) the trial court's reliance on *Michel* is misplaced because the at-issue publication was accessible in Florida; (2) the events described in the Article did not solely occur in California; and (3) Middleton suffered economic harm in Florida. (Initial Br. at 15).

As to the first argument, Middleton miscomprehends *Michel.* The at-issue article in *Michel* was, in fact, available in Florida. *See Michel v. NYP Holdings, Inc.*, 14-62649-CIV, 2015 WL 1285309, at *1 (S.D. Fla. Mar. 4, 2015) (explaining that "Michel sues over an article that appeared on the New York Post's 'Page Six,' a portion of the paper (and a stand-alone website))"; *Michel*, 816 F.3d at 692 ("Page Six is a well-known gossip column run by the *New York Post,* a widely circulated tabloid newspaper both in New York City and across the country"). *See*

*also Frey*, 829 Fed. App'x at 435 (noting that "the article was available in Florida via the internet").

As to the second argument, the fact that a handful of events described in the Article did not happen in California—such as one incident that occurred aboard a yacht off the southern coast of France, as described in filings in the California Action (Doc. 26-1 at 7; Doc. 26-14 at 13; Doc. 26-15 at 8; 26-16 at 8)—is of no moment. The substantial majority of the events described in the Article occurred in California. (Doc. 26-1). And the few events described in the Article that did not occur in California were alleged in or relate to the California Action, which was the impetus for the Article. And, more importantly, none of the events described in the Article occurred or relate in any way to Florida. (*Id.*).

And the third argument lacks merit because alleged economic harm is considered under the first significant relationships factor, not the fourth. *See Frey*, 829 Fed. App'x 434. And, as noted above, Middleton's alleged economic harm in Florida is implausibly pled, contradicted by other pleadings, and rendered insignificant by more salient factors. Thus, the trial court correctly found that the fourth factor weighed toward California law.

• • •

The California-centric nature of this suit is undeniably evident. The Article was published in a Hollywood-oriented magazine by people in Los Angeles about

people who lived and worked in Los Angeles and then sued each other in a Los Angeles court regarding events that occurred in Los Angeles. As in *Michel,* "it is beyond real dispute that [California] has the most significant relationship to the case." 816 F.3d at 694.

Tellingly, Middleton's brief is conspicuously devoid of a single opinion supporting his position. Yet the case law is replete with examples of courts applying the borrowing statute to allegations like those Middleton raised below, *i.e.,* an alleged Florida-domiciled plaintiff that filed suit in Florida about an allegedly defamatory publication—distributed across state lines and into Florida— about events that primarily occurred elsewhere.

Specifically, beyond *Frey* and *Michel*, described in Section I(A), *supra*, the court in *Klayman v. Judicial Watch, Inc.* found that none of the four significant relationship factors favored applying Florida law in a multi-state defamation case even though the plaintiff was living in—and running for political office in— Florida when the allegedly defamatory article was published. 2008 WL 11333055 at *5.

Similarly, in *Nix*, the plaintiff alleged both that he was domiciled in Florida and that his allegedly libeled nutritional supplement business was a Florida corporation. 772 Fed. App'x at 808. Despite his alleged Florida domicile, and the fact that the publication was available worldwide, the Court affirmed the Southern

District of Florida's holding that New York law applied based only on factors one and two: the harm, if any, would have mostly been felt in New York, and "although the articles were published online and accessible anywhere, the decision to publish the allegedly defamatory information was first made by [appellee], which is headquartered in New York." *Id.* at 810.[6]

And in *Jaisinghani*, the plaintiff—who had residences and businesses in both Florida and California—sued a Missouri publisher for printing an allegedly defamatory article that was available across the country. 973 F. Supp. at 1452. The court found the first two factors neutral yet held that California law applied based primarily on the third factor, domicile. *Id.*[7] Specifically, the court found that the

---

[6] The *Nix* Court found the third and fourth factors neutral because "all parties were from different locations," and none of the parties had any previous relationship with one another. 772 Fed. App'x at 811. Here, by contrast, even assuming Middleton's domicile in Florida, the third and fourth factors clearly lean toward an application of California law because the parties—especially Middleton and Lee—had an extensive relationship in California, and most of the parties are indisputably based in California. Furthermore, as the district court in *Nix* court noted, "defenses to defamation exist to protect speakers, not to provide [p]laintiffs a remedy." *Nix*, 2018 WL 8802885, at *5. For this reason, a weighted thumb is also on the side of the scale of finding that a cause of action for defamation arose in the state where the publishers decided to publish the at-issue publication—California in the instant case. *See id.*

[7] The reasons the *Jaisinghani* court found factors one and two neutral provide further support for an application of California law to the instant facts. The first factor was neutral because, despite providing "extensive evidence that [his] ability to acquire fundraising contracts in Florida has been damaged, [p]laintiff does not show how this damage is unique to Florida." 973 F. Supp. at 1452. And here, as explained in Section I(A), *supra,* Middleton's alleged damages, if any, would have

plaintiff had spent more of his time in California, "the article in question focused on Plaintiff's fundraising and other activities in California," and, seven months before the defamation suit, the plaintiff had stated in another suit that he was domiciled in California. *Id.* at 1453–54. The court then found that the fourth factor also favored application of California law because, although the defendant talked to the plaintiff in both California and Florida, "the article was primarily about [plaintiff's] businesses and actions in California and most of the research was done there." *Id.* at 1453.

Looking back to the purpose of the borrowing statute, the *Jaisinghani* court then aptly concluded,

> Plaintiff himself has a more significant relationship with California than with any other state. Moreover, the article in question focused on Plaintiff's . . . activities in California. It thus seems fitting that the California statute of limitations should apply to his libel action, especially as he filed the action one day prior to the expiration of Florida's statute of limitations and 364 days after the expiration of California's. Plaintiff appears to be engaged in the very thing that Florida's borrowing statute was designed to prevent: forum shopping.

*Id.* at 1455 (citation omitted).

The case below featured many factual commonalities with *Jaisinghani*— such as the plaintiff's recent allegations regarding his California domicile in

---

occurred in California. The *Jaisinghani* court found that the second factor was neutral because the conduct giving rise to the alleged defamation was Missouri, exclusively by virtue of its function as the headquarters of the publication. *Id.* at 1453. Here, of course, the defendants' headquarters were in California.

another lawsuit, the plaintiff's inability to demonstrate more damages in Florida than California, the at-issue article's focus on California activities, and the research primarily occurring in California. Likewise, the facts below all but conclusively demonstrate that Middleton shopped for a viable forum. Middleton, like Jaisinghani, filed a two-minutes-to-midnight defamation suit in Florida in a transparent attempt to circumvent California's limitation's statute. Indeed, filing his defamation suit in Los Angeles County—where all the parties were located and where he'd already sued Lee—would have made a lot more sense than filing suit in a jurisdiction on the far side of the continent that had nothing to do with the underlying facts.

Accordingly, because Middleton did not file this case until 365 days after the expiration of California's statute of limitations, the trial court rightly found that Middleton's defamation claim was time-barred.

## II. The district court correctly dismissed this case under local rule.

Pursuant to the Southern District's local rules, the district court initially dismissed Middleton's Original Complaint by default for failure to respond. (Doc. 77 at 2–3). Southern District of Florida Local Rule 7.1(c) states, in relevant part, that "each party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for granting the motion by default." S.D. Fla.

Local R. 7.1(c)(1). Because Middleton didn't file any response to THR's and Baum's motions to dismiss within 14 days—or within eight months—the district court granted THR's and Baum's dismissal motions by default. (Doc. 77 at 2–3).

Middleton's argument that the district court improperly dismissed his suit pursuant to his violation of Southern District of Florida Local Rule 7.1 (Initial Br. at 6–8) fundamentally misconstrues the court's ruling. Specifically, Middleton asks this Court to reverse the trial court under the standard set forth in *Gratton v. Great Am. Commc'ns*, which specifies that a court dismissing a suit *with prejudice* per local rule should find that the plaintiff displayed contempt for court orders and that lesser sanctions (*e.g.*, dismissal without prejudice) would be insufficient. *See* (Initial Br. at 6–7) (citing 178 F.3d 1373, 1374 (11th Cir. 1999).

But here, the district court neither expressly stated or implied that it dismissed Middleton's suit with prejudice pursuant to the local rule. The court dismissed the suit by default pursuant to Middleton's violation of local rule, yet was silent as to prejudice. (Doc. 77 at 1–3). The court then separately denied with prejudice Middleton's motion for leave to amend for reasons wholly unrelated to the dismissal by default. The court explained that "although the Complaint is dismissed by default, the Court shall address the defamation claim on the merits since it is the only cause of action that is raised in the Proposed Amended Complaint." (Doc. 77 at 3). Applying Florida's borrowing statute, then, the court

concluded the defamation claim was barred by the applicable statute of limitations and any amendment would, therefore, be futile. (*Id.* at 3–9). *See also* Section III, *infra* (explaining why the trial court was correct in denying Middleton's motion for leave to amend on futility grounds).

In any event, the court's dismissal under local rule was entirely within its discretion, as Rule 41 grants district courts the authority to involuntarily dismiss complaints. *See* Fed. R. Civ. P. 41(b). *See also Heard v. Nix*, 170 Fed. App'x 618, 619 (11th Cir. 2006) (recognizing that a court may dismiss a claim under Rule 41 *sua sponte*); *Olivares v. Warden, USP Coleman I*, 786 Fed. App'x 994, 995 (11th Cir. 2019) (explaining that dismissal without prejudice under Rule 41(b) "does not constitute an abuse of discretion because the affected party may simply refile"); *Hawthorne v. United States*, 21-10164, 2022 WL 3099271, at *1 (11th Cir. Aug. 4, 2022) ("Ordinarily, a dismissal without prejudice is not an abuse of discretion."). Thus, the district court properly dismissed Middleton's suit under Southern District of Florida Local Rule 7.1(c).[8]

---

[8] Moreover, the trial court's application of Local rule 7.1(c) was especially proper because, as noted in the Statement of the Facts, *supra*, Middleton engaged in dilatory conduct and was provided ample warning. *See Rembert v. Dunmar Estates*, 22-11526, 2022 WL 17986207, at *1 (11th Cir. Dec. 29, 2022) (explaining that when a plaintiff violates local rules, it's "not an abuse of discretion to dismiss, even *with prejudice*, due to plaintiff's personal inattention to this case" (citation and quotation marks omitted); *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir. 1989) ("dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion"); *Powers*, 2023 WL 4623608,

## III. The District Court correctly denied leave to amend.

A trial court should deny leave to amend under Rule 15(a)(2) if the proposed amended pleading would be futile—that is, the proposed complaint would not survive Rule 12(b)(6) scrutiny. *Cotriss v. City of Roswell*, 19-12747, 2022 WL 2345729, at *5 (11th Cir. June 29, 2022). As noted above, the district court denied with prejudice Middleton's motion for leave to amend because any amendment would have been futile, as the case was time-barred. (Doc. 77 at 6–9).

Middleton's PAC added no new parties, nixed the infliction of emotional distress claim,[9] and reduced the at-issue statements from five to two. (Doc. 63-1). But these amendments did not fix the fundamental problem with the Original Complaint: Middleton filed suit 365 days too late.

at *3 (upholding dismissal under S.D. Fla. Local Rule 7.1(c), where the plaintiff had declined to respond to the defendant's motion to dismiss, because "[t]he district court instructed [plaintiff] early in the litigation that she must comply with the local rules or face sanctions").

[9] As argued in THR's motion to dismiss (Doc. 25 at 17–19), the intentional infliction of emotional distress claim in the Original Complaint was specious for two reasons. First, the mere publication of a false statement of fact, as a matter of law, cannot give rise to a claim for infliction of emotional distress. *See Brown v. Suncoast Beverage Sales, LLP*, No. 2:09-CV-498, 2010 WL 555675, at *3 (M.D. Fla. Feb. 10, 2010); *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004). And second, Florida's single-action rule prevents a plaintiff from filing any claim but a single count for defamation whenever the gravamen of the dispute centers on the publication of allegedly false statements. *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208–09 (Fla. 4th DCA 2002); *Ovadia v. Bloom*, 756 So. 2d 137, 140–41 (Fla. 3d DCA 2000).

Middleton tried to resurrect his lifeless pleading by alleging more stridently in the PAC that he lived or lives in Florida.[10] (Doc. 63-1 at ¶¶ 12–16). Yet, as the district court found, Middleton's "allegations claiming he was injured in Florida do not alter this Court's conclusion that California law applies," because, as in *Frey*, the central events described in the at-issue publication and all the activities taken by the defendants took place outside the plaintiff's alleged domicile. *See* (Doc. 77 at 7–9) (citing *Frey*, 829 F. App'x at 435–36).

Thus, even if Middleton lived in Florida at all relevant times, as alleged in the PAC, the applicable statute of limitations *vis-a-vis* Florida's borrowing statute would still bar the defamation claim. *See Frey*, 829 Fed. App'x at 436; *Jaisinghani*, 973 F. Supp. at 1452; *Nix*, 2018 WL 8802885, at *4; *Klayman*, 2008 WL 11333055, at *5.

---

[10] Regarding the dispositive matter of where the cause of action arose, the Original Complaint and PAC featured few appreciable differences; beyond the allegation that he moved to Florida in 2018, the PAC alleged two additional yet uncontested facts. First, the PAC noted that the Article was available worldwide, including Florida. (Doc. 63-1 at 5). But the fact that an at-issue publication is available online in the plaintiff's preferred jurisdiction is of trivial significance, if any, to the Restatement's test. *Nix*, 772 Fed. App'x at 810; *Frey*, 829 Fed. App'x at 435. Secondly, the PAC alleges—as noted in the Article itself (Doc. 26-1 at 10)—that Middleton moved one of his production companies, Middleton Media, to Nevada at some unspecified point. (Doc. 63-1 at 6). This allegation is not helpful to Middleton's position because the existence of one nonparty production company in Nevada does nothing to push the needle toward an application of Florida law. *See Jaisinghani*, 973 F. Supp. at 1452.

Ultimately, as the trial court correctly concluded, California bore a stronger relationship to the facts of the case because the Article was published in a magazine called *The Hollywood Reporter* by people in Los Angeles about two men who lived and produced films and sued each other in Los Angeles. (Doc. 77 at 4–5). So even accepting all of Middleton's allegations, California still maintained a stronger relationship to the underlying suit than Florida. For this reason, the trial court rightly found that the PAC could not push the sand back up the hourglass: the statute of limitations had lapsed and amendment was futile.

## IV. The district court had ample other reasons to dismiss the suit.

This Court can also affirm dismissal on the other grounds raised below but not reached by the district court. *See Turner v. Wells*, 879 F.3d 1254, 1271 (11th Cir. 2018) (affirming dismissal for an additional reason not addressed by the trial court). Here, in the interests of judicial economy, the trial court analyzed only the first issue raised in THR's motion to dismiss: that the suit was barred by the statute of limitations. (Doc. 77 at 3–9). But the court could have dismissed as a matter of law on at least two other grounds because Middleton failed to adequately plead two elements of the tort of defamation.[11]

---

[11] Also, for the reasons set forth in Baum's motion to dismiss and joint response opposing Middleton's motion for leave to amend, the trial court lacked personal jurisdiction over Baum because, in short, Baum had no nexus with Florida. (Doc. 27 at 1–18; Doc. 28 at 1–2; Doc. 66 at 14–17).

As a defamation plaintiff in Florida, Middleton was required to plausibly allege facts to support four elements: (1) a false and defamatory statement about himself; (2) an unprivileged publication to a third party; (3) fault on the part of the Defendants; and (4) damages. *Mile Marker v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002). Here, Middleton did not plausibly allege facts to support either the second or third elements of the tort.

### A. The Article was privileged.

Florida recognizes "many safeguards and privileges" designed to protect publications about matters of public concern, even if the substance of the publications is factually incorrect. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1111 (Fla. 2008). One such privilege, the neutral-report privilege, provides that "disinterested communications of matters of public concern are privileged, even if defamatory." *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021). That is, the privilege shields from liability statements published by media entities—even if the statements are false and defamatory—as long as the statements constitute "disinterested and neutral reporting" on an existing matter of interest to the public. *Rendon v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269, 1276 (S.D. Fla. 2019); *Huszar v. Gross*, 468 So.2d 512, 516 (Fla. 1st DCA 1985).

Contrary to Middleton's characterization of the Article as a journalistic ambush, *see* (Doc. 63-1 at ¶¶ 1, 4, 5, 6, 37, 39, 65), a cursory review of the Article

demonstrates that it constituted a neutral portrayal of a high-profile dispute. *See Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1318-19 (S.D. Fla. 2020) (noting that a "plain reading of the article" contradicted the defamation plaintiff's characterizations of the publication). Middleton and Lee engaged in a protracted, high-profile, and contentious legal battle—with both men accusing the other in public filings of sexual improprieties, breaching contracts, and engaging in millions of dollars' worth of fraud. (Docs. 26-11–26-16).

In turn, the Article even-handedly described the legal battle between the two powerful men. The Article included equal and disinterested discussion of both men's positions in the underlying litigation, and it featured extensive input from sources in both men's respective camps, including friends, lawyers, and publicists, as well as documents from the public filings in the California Action. (Doc. 26-1). And the Article, when featuring less-than-flattering allegations about the men, included each man's denials or explanations of his opponent's position. (*Id.*).[12] For this reason, the Article constituted a neutral report on a matter of public concern.

---

[12] As noted in THR's motion to dismiss (Doc. 25), because the at-issue statements reflect information appearing in Middleton's and Lee's filings in the California Action, the Article is also independently shielded by Florida's fair-report privilege, which precludes liability for summarizing issues presented in judicial proceedings or records. *See, e.g.*, *Larreal v. Telemundo of Florida, LLC*, 489 F. Supp. 3d 1309, 1321–24 (S.D. Fla. 2020) (finding a news report protected by the fair-report privileged because it was substantially correct in providing the "gist" of information contained in a public record).

*See Barbuto v. Miami Herald Media Co.*, No. 21-CV-20608, 2022 WL 123906, at
*5 (S.D. Fla. Jan. 13, 2022).

### B.    The Article was not published with actual malice.

In a defamation action, a plaintiff must allege facts sufficient to show the
defendant acted with the requisite degree of fault. Where, as here, the plaintiff is a
public figure, he must plausibly allege facts to show the defendant published the
challenged statements with actual malice, *i.e.*, with knowledge of their falsity or a
reckless disregard for their truth or falsity. *New York Times v. Sullivan*, 376 U.S.
254 (1964); *Rasmussen v. Collier Cnty. Publ'g Co.*, 946 So. 2d 567, 570 (Fla. 2d
DCA 2006).

### 1.  Middleton is a public figure.

Whether a plaintiff is a public figure—and must therefore plausibly plead
actual malice—is an issue of law that the trial court determines at the Rule 12 stage
by looking at the face of the pleadings and by taking judicial notice of the
plaintiff's public activities. *See Turner*, 879 F.3d at 1272 n.5. Two types of public
figures exist. First, general-purpose public figures are individuals who, by reason
of fame or notoriety in a community, must prove actual malice in all cases. *Id.* at
1271. Second, limited-purpose public figures are individuals who thrust themselves
into a particular controversy and must show actual malice only with respect to
statements related to the controversy. *Id.* Middleton is both.

He's a general purpose-public figure because he is a well-known movie producer. *See Cepeda v. Cowles Mag. & Broadcasting, Inc.*, 392 F.2d 417, 419 (9th Cir. 1968) (explaining that general purpose public figures "include artists, athletes, business people, dilettantes, and anyone who is famous or infamous because of who he is or what he has done."). The Article and documents filed in the California Action are saturated with references to prominent celebrities, blockbuster films, and activities within the "highest echelons of the entertainment industry." (Doc 26-13 at ¶¶ 1–2, 54–55 (alleging that Lee diminished Middleton's notoriety by removing producer credits from Middleton's Internet Movie Database profile); (Docs. 26-2–26-10 (featuring a sampling of articles about Middleton, demonstrating his prominence in the film industry).

He's also a limited-purpose public figure regarding any suit, such as the instant matter, that concerns his dispute against Lee. A plaintiff is a limited-purpose public figure if (1) a public controversy exists; (2) the plaintiff played a central role in the controversy; and (3) the at-issue statements were germane to the controversy. *Friedgood v. Peters Publ'g Co.*, 521 So. 2d 236, 239 (Fla. 4th DCA 1988). All three elements are met here because the challenged statements pertain directly to a public controversy into which Middleton injected himself: his own fight against Lee. Middleton sued Lee and then engaged in a high-profile and contentious legal battle, with both men accusing the other of breaching contracts

and engaging in millions of dollars' worth of fraud.[13] *See Mile Marker*, 811 So. 2d at 845 (finding that the plaintiff was a limited-purpose public figure because it injected itself into a controversy about the superiority of hydraulic winches).

In sum, Middleton's status as a famous movie producer, along with his public and contentious legal dispute with his former business partner, significant press coverage of the dispute, and his employment of a publicist, establishes him as both a general-purpose- and limited-purpose public figure. *See Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1310 (M.D. Fla. 2021), *aff'd*, No. 21-12030, 2021 WL 5858569 (11th Cir. Dec. 10, 2021); *Turner*, 879 F.3d at 1273.

## 2. *Middleton did not plausibly plead actual malice.*

As a public figure, Middleton was required to plausibly allege that THR and Baum acted with actual malice—which is a "daunting" standard. *Klayman v. City Pages*, No. 5:13-cv-143, 2015 WL 1546173, at *40 (M.D. Fla. April 3, 2015). *See also Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (explaining that the

---

[13] Middleton's employment of a public-relations firm regarding the California Suit confirms that he is at least a limited-purpose public figure. *See* (Doc. 1 at ¶¶ 19, 20; Doc. 26-1 at 4–5; Doc. 63-1 ¶¶ 60–61, 64, 70–72) (demonstrating his use of a PR team); *Patrick v. Cleveland Scene Pub. LLC*, 582 F. Supp. 2d 939, 951 (N.D. Ohio 2008), *aff'd*, 360 Fed. App'x 592 (6th Cir. 2009) (holding that a plaintiff was a public figure, in part, because he because he "retained a public relations firm to represent his interests"). *See also Jones v. Metro Prop. Group, LLC*, No. 13-11977, 2014 WL 1305142, at *10 n.5 (E.D. Mich. Mar. 28, 2014); *Carr v. Forbes, Inc.*, 121 F. Supp. 2d 485, 492 (D.S.C. 2000), *aff'd*, 259 F.3d 273 (4th Cir. 2001).

actual malice "standard is necessary to give adequate 'breathing space' to the freedoms protected by the First Amendment").

The standard is not satisfied "merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'n, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Instead, the question is "whether the defendant . . . actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 703. Therefore, even proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" will not establish actual malice. *Harte-Hanks*, 491 U.S. at 664-65 n.5. *See also Michel*, 816 F.3d at 703 ("a failure to investigate, standing on its own, does not indicate the presence of actual malice") (citation omitted); *Klayman*, 2015 WL 1546173, at *16 (rejecting the argument that defendants' failure to contact the plaintiff prior to publication establishes actual malice). Rather, a plaintiff is required to allege facts showing that a defendant purposefully avoided further investigation with the intent to avoid the truth. *See Michel*, 816 F.3d at 703.

Here, Middleton did not plausibly plead any facts that THR and Baum entertained serious doubts about the veracity of any challenged statement. Though the PAC liberally employs the phrase "actual malice," the only alleged facts related

to this element of the tort were that (a) the Article quoted Lee, who was, according to Middleton, an unreliable source (*id.* at ¶¶ 47–57); (b) Middleton's publicist and lawyer denied some of the statements in the Article (*id.* at ¶¶ 60–76); and (c) THR amended a quotation in the online version of the Article as a courtesy to Middleton's publicist (Doc. 63-1 at ¶¶ 70–73). None of these allegations support a finding of actual malice.

First, THR's and Baum's decision to use Lee as a source—that is, to include Lee's side of the story alongside Middleton's side of the story—does not in any way suggest actual malice. For example, courts have found a publisher's reliance on tax fraudsters insufficient to constitute actual malice. *See, e.g.*, *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. 4th DCA 2010) (holding that a source's tax fraud conviction did not justify an actual malice finding where there were "no obvious reasons for ESPN to doubt the challenged statements"). Moreover, THR and Baum did not just rely on Lee; the Article featured both men (as well as their friends, publicists, and lawyers) as sources. (Doc. 26-1). Middleton cannot plausibly demand that THR and Baum publish only his preferred narration of events—especially when the men's contested account of events constituted the very subject of both the California Action and the Article describing it.

The inclusion of both sides' allegations and denials, far from demonstrating actual malice, *precludes* a finding of actual malice. *See Michel*, 816 F.3d at 703 ("where a magazine article cast doubt on its primary source by quoting other individuals calling the source a 'liar' and a 'con man,' but explaining why the magazine chose to rely on the source anyway, the plaintiff had not proven actual malice"); *Jacoby*, 537 F. Supp. 3d at 1311–12 (explaining that actual malice cannot be shown if the at-issue publication includes an explanation of the plaintiff's position). This is because inclusion of conflicting information allows readers to judge an article's veracity for themselves and "reduces the risk that readers will reach unfair (or simply incorrect) conclusions, even if the publisher itself has." *Michel*, 816 F.3d at 703.

Second, a plaintiff's denials do not, as a matter of well-established Florida law, suggest actual malice. *See Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 296 (Fla. 2d DCA 2001) (explaining that a publisher's decision to not print an eventual plaintiff's denials does not demonstrate actual malice). This is because "such denials are so commonplace . . . that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977). What's more, the Article in this case featured Middleton's denials—as mediated via his publicist and counsel (Doc. 26-1)—which, once again, affirmatively demonstrates that THR and Baum did not act

with actual malice. *See Dockery*, 799 So. 2d at 296; *Jacoby*, 537 F. Supp. 3d at 1310–12.

Finally, a post-publication amendment of an article, if anything, negates a finding of actual malice. *See Clark v. Fernandina Beach News-Leader, Inc.*, 93-616-CA, 1994 WL 532980, at *6 (Fla. 4th Jud. Cir. Ct. June 2, 1994) (citing cases for the proposition that a post-publication amendment or retraction "tends to negate any inferences of actual malice"). This is because a defamation plaintiff must show that the defendant, at the time of publication, knew or was highly aware of the probability that the at-issue statement was false. *Michel*, 816 F.3d at 703. And post-publication amendment negates the inference of a pre-publication knowledge of falsity. *Clark*, 1994 WL 532980, at *6. Because Middleton did not plausibly articulate facts demonstrating that THR or Baum subjectively doubted the truth of anything they said, the trial court could have also dismissed the suit for Middleton's failure to allege the third element of defamation. *See Turner*, 879 F.3d at 1273.

## Conclusion

The Florida Legislature enacted the borrowing statute to prevent plaintiffs from filing suits in Florida that don't belong in Florida. The trial court properly determined that the suit below didn't belong in Florida, as each of the four significant relationships factors unequivocally demonstrated that California, not

Florida, bore a greater relationship with the facts of the case. For this reason, John Middleton's suit was barred by law 365 days before he filed it—a defect that no amended pleading could cure.

In short, Middleton's pleadings—both operative and proposed—failed to state a claim upon which relief could be granted. Accordingly, THR and Baum respectfully ask the Court to affirm the trial court's dismissal with prejudice of Middleton's untimely and ill-pled suit.

Respectfully submitted,

*/s/ Rachel E. Fugate*
Rachel E. Fugate

SHULLMAN FUGATE PLLC
Rachel E. Fugate (Fla. Bar No. 144029)
Allison S. Lovelady (Fla. Bar No. 70662)
Minch Minchin (Fla. Bar No. 1015950)
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619
Email: rfugate@shullmanfugate.com
Email: alovelady@shullmanfugate.com
Email: mminchin@shullmanfugate.com

*Counsel for Appellees The Hollywood Reporter, LLC and Gary Baum*

## Certificate of Compliance with Type-Volume Limit, Typeface Requirement, and Type-Style Requirement.

The undersigned counsel hereby certifies that this brief complies with the requirements of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted Fed. R. App. P. 32(f), this brief contains approximately 10,734 words. Further this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office in 14-point Times New Roman.

*/s/ Rachel E. Fugate*
Rachel E. Fugate

## Certificate of Service

I HEREBY CERTIFY that on this 22d day of January 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve this document on all counsel of record. Further, four paper copies of this brief have been sent via Federal Express to the Clerk of Court in accordance with Rule 31-3 of the Rules of the U.S. Court of Appeals for the Eleventh Circuit.

*/s/ Rachel E. Fugate*
Rachel E. Fugate